IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| THOMAS W. LOVEGROVE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 7:14-cv-00329-MFU |
| | ) | |
| OCWEN HOME LOANS SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### DEFENDANT OCWEN LOAN SERVICING, LLC'S
### MOTION *IN LIMINE* TO PRECLUDE EVIDENCE

Defendant Ocwen Loan Servicing, LLC ("Ocwen")[1] files the following Motion *in limine* to preclude Plaintiff Thomas W. Lovegrove ("Lovegrove") from offering argument regarding Lovegrove's claim for actual and emotional damages under the Fair Credit Reporting Act ("FCRA"). This material should be excluded for two reasons. There is no admissible evidence to support the central plank of Lovegrove's theory of relief: that he was denied credit because of Ocwen's credit reporting, which in turn caused his company to lose the extraordinary opportunity to build hundreds of SweetFrog Frozen Yogurt stores. And even if the lost profit damages could be proven, they are the property of Baywatch—the entity that would have gotten the benefit of the lost contracts—rather than Lovegrove, who has no standing to assert them. Because of this, the Court should prevent Lovegrove from pursuing his actual and emotional damages claim at trial and introducing any evidence thereof.

---

[1] Ocwen is incorrectly identified in the caption as "Ocwen Home Loans Servicing, LLC."

**There is No Admissible Evidence Showing a Causal Connection Between Ocwen's
Credit Reporting and Lovegrove's Claimed Actual and Emotional Damages**

In order to recover damages based upon a loss of economic opportunity due to the inability to obtain credit, an FCRA plaintiff has the "burden of demonstrating any damages resulting from being deprived of a loan." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475-76 (2d Cir. 1995). This burden is met by providing "affirmative evidence that he was in fact denied a loan application or required to pay excessive interest rates because of the alleged incorrect information contained in the credit report." *Evans v. Credit Bureau*, 904 F. Supp. 123, 126 (W.D.N.Y. 1995).

In his Second Supplemental Responses to Defendant's First Set of Interrogatories, Lovegrove identifies, as his actual damages, "losing construction projects for SweetFrog [Frozen Yogurt stores] that I would have been hired to perform, but that I was not hired to perform because of Ocwen's inaccurate credit reporting." Plaintiff's Second Supplemental Response to Interrogatory No. 17, attached hereto as Exhibit A. The total amount of these losses is lost profits that Lovegrove's closely held corporation, Baywatch Development Corporation ("Baywatch") would have yielded had he been hired to undertake these construction projects.[2] *Id.*; Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory No. 16, attached hereto as Exhibit B. In addition, Lovegrove asks for "damages for emotional distress in the amount $100,000.00 as a result of being unable to pursue my life's work, the indignity of being unable to obtain credit, and of being unable to obtain a fresh start even though I filed bankruptcy." Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory No.

---

[2] While not dispositive of the issues raised in this motion, it bears pointing out that these figures are based on Lovegrove's assumption that SweetFrog would have hired Baywatch to build approximately 200 stores from October 2013 on. Exhibit H (Lovegrove Deposition, Exhibit 20). Derek Cha, SweetFrog's former CEO, testified that during this period the company built no more than **25 stores**. Deposition of Derek Cha, pp. 37-38, excerpts of which are attached as Exhibit I. In short, Lovegrove's inflated damages assessment bears no resemblance to reality.

16.   As Lovegrove made clear during his deposition, these damages are similarly rooted in his inability to obtain credit as a result of Ocwen's alleged incorrect reporting, thereby damaging his ability to run his business.  Deposition of Thomas W. Lovegrove, pp. 63-65, excerpts of which are attached as Exhibit C.

Lovegrove offers three pieces of evidence to substantiate his theory that his ability to secure financing to allow Baywatch to get a contract with SweetFrog was sabotaged by Ocwen's credit reporting.  The first two are uncorroborated statements by loan officers at SunTrust and Bank of Botetourt, both of whom supposedly reviewed Lovegrove's credit report and told him "Don't bother" applying for credit.  Lovegrove Deposition, p. 59.  Assuming for the sake of argument that these statements (which Lovegrove did not even purport to directly quote at his deposition) would, if believed, be sufficient to establish liability, they will never be heard by the jury because they are rank hearsay.  *See Williams v. Equifax Credit Info. Servs.*, No. 4:07-00322-RBH, 2007 U.S. Dist. LEXIS 92471, *9 (D.S.C. Dec. 17, 2007) (out-of-court statement by a loan officer as to the reason why credit was denied is inadmissible hearsay).

That leaves the "Declaration of Joe Crandall on behalf of Wells Fargo Bank," dated April 7, 2015 (the "April 7 Declaration").  A copy of the April 7 Declaration is attached as Exhibit D.  The April 7 Declaration states that, at some undefined time between July 2012 and October 2013, Lovegrove "applied for a credit line, that was intended to lead to multi-million dollar commercial credit lines to support Baywatch Development Corporation."  Ex. D, ¶ 5.  Crandall, however, "received credit reports showing that Ocwen was reporting negative credit remarks.  Based on this, and only this, Wells Fargo denied the commercial credit application."  *Id.*, ¶ 6.

Whatever the evidentiary value of the April 7 Declaration when it was given, it has no value now because **both Crandall and Wells Fargo have repudiated it in its entirety**.

DM1\5832684.1

Attached as Exhibit E is a declaration executed by Crandall on June 23, 2015 (the "June 23 Declaration").  In the June 23 Declaration, Crandall avers that, "[a]t the time I signed the April Declaration, I did not realize and appreciate that it was a sworn statement. nor did I understand its purpose. . . . If I realized the purpose of the April Declaration at the time I signed it, I would not have signed it."  Ex. E, ¶ 3.  Crandall declares that he "had no authority to make statements of the kind contained in the April Declaration on behalf of Wells Fargo."  *Id*., ¶ 4.  In particular, he "did not discuss the April Declaration or the information contain in the April Declaration with Wells Fargo" nor did he "obtain the approval of Wells Fargo to sign the April Declaration."  *Id*.  Crandall makes clear that the April 17 Declaration "should not be considered a declaration made by or on behalf of Wells Fargo."  *Id*.

The June 23 Declaration notes that the April 17 Declaration was "drafted by Mr. Lovegrove for me to sign[,]" and makes clear that the statement therein "that Mr. Lovegrove was denied a credit line by Wells Fargo based solely on credit reporting from Ocwen Loan Servicing, LLC . . . was not a correct statement."  Ex. E, ¶ 5.  Crandall disavows any knowledge or information that would lead him "to conclude that Mr. Lovegrove was denied credit due to the credit reporting of Ocwen Loan Servicing, LLC.  I cannot declare under oath, nor would I be able to testify at trial, that Wells Fargo would have extended credit to Mr. Lovegrove, or his company Bay Watch Development Corporation, had Mr. Lovegrove's credit report not reflected any credit reporting from Ocwen Loan Servicing, LLC."  *Id*.  This is bolstered by Crandall's statement that "no credit denial" for Lovegrove "could be located and that "a thorough search of Wells Fargo's records has since been conducted and no such denial has been found."  *Id*.  In summary, Crandall declared that, "[b]ecause the April Declaration contains facts that are not true

and cannot be supported with documents from Wells Fargo, I would like to retract the April Declaration in its entirety." *Id*., ¶ 8.

Additional declarations submitted on behalf of Wells Fargo similarly reject the idea that Wells Fargo has any documentation substantiating the assertions in the April 7 Declaration.

- Timothy Linquist, a paralegal at Wells Fargo, declared that, through a search of Wells Fargo's records, "I have not been able to locate any denial notice as identified in Mr. Crandall's Declaration" nor have "I . . . been able to locate any application for a loan, line of credit or other form of request for lending made to Wells Fargo by Thomas Lovegrove or BayWatch Development Corporation in the years 2012 or 2013 (as identified in Mr. Crandall's Declaration)." Ex. F, ¶¶ 1, 6-7.

- Samia Echanique, a Regional Banking Store Manager, declared that she reviewed the April 7 Declaration and, based on this review, concluded that: (1) Crandall "was not authorized by Wells Fargo to make a Declaration in this case"; (2) the April 7 Declaration "should not be considered as a statement by Wells Fargo"; and (3) "Wells Fargo does not adopt the statements made by Mr. Crandall" in the April 7 Declaration. Ex. G, ¶¶ 1-7.

Taken together then, these three declarations eliminate any causal connection between Ocwen's credit reporting and Lovegrove's actual and emotional damages. Lovegrove simply has **no evidence** with which to carry his burden of showing that he was denied the credit necessary to allow Baywatch to enter into contracts with SweetFrog because of Ocwen's alleged violations

DM1\5832684.1

of the FCRA.[3]  Even assuming that Lovegrove will testify at trial that he was denied credit by Wells Fargo—a claim that Wells Fargo denies having any knowledge of—his subjective belief that this denial was caused by Ocwen is not enough to carry his burden of proof.  *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008) ("Plaintiffs' deposition testimony that they applied for and were denied loans by Chase and Upland based upon the alleged inaccurate information in their credit reports is unsubstantiated, speculative, and conclusory, and 'insufficient to avoid summary judgment on an issue as to which [Plaintiffs] bear [] the ultimate burden of proof'"), *aff'd*, 360 F. App'x 255 (2d Cir. 2010).  Therefore, the Court should preclude all argument concerning both his actual and emotional damages at trial.

### Lovegrove's Claimed Lost Profits Belong to Baywatch, and Lovegrove Does Not Have Standing to Assert Them

If not excluded on the grounds above, evidence of Lovegrove's lost profits should be excluded for another reason.  Lovegrove's responses to Ocwen's interrogatories demonstrate that the essence of his lost profits claim is that "plaintiff, and his closely held corporation, Baywatch Development Corporation, would have been engaged by Sweet Frog Premium Frozen Yogurt to build 193 stores" but "plaintiff was unable to obtain the credit necessary to buy and lease the materials and equipment necessary to build the Sweet Frog stores."  Plaintiff's Response to Defendant's First Set of Interrogatories, Interrogatory No. 16.  Thus, Lovegrove's allegation is that, because he was unable to obtain credit, **Baywatch** was unable to execute contracts that would have provided it with millions of dollars in lost profits.  But the law is clear that an

---

[3] The retracted April 7 Declaration is hearsay if offered to prove the truth of Crandall's statements therein. Fed. R. Evid. 801(c). While Rule 801(d)(1)(A) excludes from the definition of hearsay certain prior inconsistent statements, that is only where the statement was given "at a trial, hearing, or other proceeding or in a deposition." Fed. R. Evid. 801(d)(1)(A). A declaration does not fall into this enumeration and is accordingly hearsay. *Afy v. N. Plains Feeders, Inc.*, 482 B.R. 830, 843 (D. Neb. 2012) ("This rule is inapplicable here because Gifford's declaration was not a prior statement 'given under penalty of perjury at a trial, hearing or other proceeding or in a deposition.'" (citation omitted)).

individual shareholder, even of a closely-held corporation, cannot recover damages that properly flow to the corporation.  Evidence of Lovegrove's lost profits should therefore be excluded at trial.

"It is considered a 'fundamental rule' that '[a] shareholder -- even the sole shareholder -- does not have standing to assert claims alleging wrongs to the corporation.'"  *Smith Setzer & Sons v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994).  "The derivative injury rule holds that a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation."  *Kaplan v. First Options (In re Kaplan)*, 143 F.3d 807, 811-12 (3d Cir. 1998).  The reason for this rule is one of balance:  if courts are going to recognize the personal liability shielding effects of the corporate form, then it would be unfair to disregard that form when it comes to awarding damages for losses suffered by the corporation.  *Kaplan*, 143 F.3d at 812 ("since Kaplan chose to structure his business in the corporate form and received the benefits of that form by avoiding liability for MKI's debts, the derivative injury rule prevents him from piercing the corporate veil in reverse in order to recover individually for MKI's losses"); *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692-93 (7th Cir. 1990) ("The investors are asking us to disregard Ringo's corporate form. They want us to see that corporations are not distinct entities but complex contractual arrangements among investors and other venturers. True enough, but these contracts have legal effects, and respect for the corporate form is among them.").

Lovegrove's responses to Ocwen's interrogatories make clear that any profit he would have received from these supposed future transactions would have been obtained through agreements between Baywatch and SweetFrog.  Lovegrove's injury, then, is entirely derivative of what Baywatch is supposed to have lost; Lovegrove has been harmed because Baywatch has

7

been harmed, and the FCRA violation alleged is "not coupled with injury." *Kagan*, 907 F.2d at 692. A shareholder of a corporation cannot "recover for injuries mediated through" the corporation. *Id*. at 693. Lovegrove, in effect, "seek[s] the best of both worlds: limited liability for debts incurred in the corporate name, and direct compensation for its losses. That cushy position is not one the law affords. Investors who created the corporate form cannot rend the veil they wove." *Id*. As a result, evidence concerning Lovegrove's supposed lost profits should be precluded at trial, because he has no legal right to recover these amounts.[4]

## CONCLUSION

For the reasons set forth above, Ocwen requests that the Court grant this Motion *in limine* and exclude the evidence referenced herein.


Dated this 3rd day of July 2015.             Respectfully submitted,

                                               /s/ Christopher M. Corchiarino
                                               Christopher M. Corchiarino
                                               VA Bar No. 48193
                                               ***Attorneys for Defendant Ocwen Loan Servicing, LLC***
                                               Goodell, DeVries, Leech & Dann, LLP
                                               One South Street, 20th Floor
                                               Baltimore, Maryland  21202
                                               Tel: 410-783-4038
                                               Fax: 410-783-4040
                                               cxc@gdldlaw.com

Alexander D. Bono (Admitted *Pro Hac Vice*)
Brett L. Messinger (Admitted *Pro Hac Vice*)
Duane Morris LLP
30 South 17th Street
Philadelphia, PA  19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
ABono@duanemorris.com
BLMessinger@duanemorris.com

---

[4] This reasoning does not apply to Lovegrove's alleged emotional damages, which are injuries suffered by Lovegrove, rather than Baywatch.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of July 2015, a copy of the foregoing was sent via ECF to all counsel of record.

/s/ Christopher M. Corchiarino
Christopher M. Corchiarino

DM1\5832684.1