**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **THOMAS W. LOVEGROVE** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:14cv00329** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **OCWEN LOAN SERVICING, LLC** | ) | **By: Hon. Michael F. Urbanski** |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

This case involves the interplay between the protections afforded the personal interests of individuals under the federal bankruptcy laws, federal credit reporting and debt collection statutes, and the ability of a secured creditor, acting through a loan servicing company, to protect its interests in real estate secured by a mortgage following default. Plaintiff Thomas Lovegrove ("Lovegrove") defaulted on his mortgage in 2009, received a Chapter 7 bankruptcy discharge of that debt in 2011, yet remains on the premises. In this lawsuit, Lovegrove claims that Ocwen Loan Servicing, LLC ("Ocwen") violated both the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, by attempting to collect on his mortgage debt that was discharged in bankruptcy and falsely reporting to consumer reporting agencies ("CRAs") that the debt was still owed. Ocwen denies any statutory violations and asserts that, Lovegrove's personal bankruptcy notwithstanding, the deed of trust allows it to protect the secured creditor's interest in the real estate secured by the defaulted mortgage and that it acted lawfully to do so. This matter is before the court on Ocwen's Motion for Summary Judgment. ECF No. 49. Lovegrove filed an opposition brief, ECF No. 53, and the court heard oral argument on July 22, 2015. For the following reasons, Ocwen's motion is **GRANTED**.

In 2006, Lovegrove signed a promissory note in the amount of $1,239,000.00 in favor of Bank of America and secured by a deed of trust on a home at Smith Mountain Lake in Moneta, Virginia. Although Lovegrove defaulted on the loan in April 2009, ECF No. 51 at *1, it is undisputed that he continues to live at the property. In December 2010, Lovegrove filed for Chapter 7 bankruptcy relief, and in March 2011, he obtained a discharge of his obligation to Bank of America under the promissory note. Id. at *2. In May 2012, Bank of America began foreclosure proceedings on the property. ECF No. 56-1 at *4. Lovegrove filed for Chapter 13 bankruptcy protection which halted the foreclosure process. The Chapter 13 action was dismissed about two weeks later. ECF No. 51 at *2.

On October 1, 2012, Ocwen became the servicer of Lovegrove's mortgage for the Moneta property and mailed Lovegrove a letter informing him of Ocwen's role. Id.; ECF No. 51-2 at *2. The letter contained two disclaimers. The first disclaimer gave Lovegrove thirty days to dispute the validity of the debt secured by the Moneta property. The second disclaimer located at the bottom of the page in bold and italicized font states:

> ***This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.***

ECF No. 50-2. Ocwen mailed another letter the same day discussing alternatives to foreclosure. ECF No. 53 at *26. Ocwen then began sending Lovegrove monthly account statements regarding the amount secured by the deed of trust for the Moneta property. ECF No. 51 at *2.

The monthly account statements contain various information. For example, the October 2012 statement lists the current principal balance as $1,207,066.87 and the next payment due date as

4/01/2009. The October statement also identifies the total amount due, including current and past due principal, interest, and escrow, of $373,804.05 and gives a due date of 11/1/2012. Under a section titled "Important Messages," the account statement provides the following:

> We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. . . . .
>
> If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.
>
> Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. . . . .

ECF No. 50-3 at *2. The "Important Bankruptcy Information" section on the back of the statement reads

> If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have any questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us . . . .

Id. at *3. Lovegrove does not allege that Ocwen made any other attempts to contact him either by phone or through any third parties.

Lovegrove wrote to Ocwen on November 16, 2012 and asked Ocwen to "stop collection [and] reporting debt to the credit bureau's [sic] regarding my home mortgage notes originated by Bank of America that was discharged in a Chapter 7 bankruptcy . . . . Please stop, I am unable to secure credit for my business with your reporting that is not correct." ECF No. 53 at *41. Lovegrove wrote similar letters to Ocwen on June 15, 2013 and April 3, 2014. ECF No. 50-6 at *9; ECF No. 53 at *40, *42. Ocwen continued to send Lovegrove monthly statements until at least June 2013. ECF No. 50-3 at *18. Ocwen also sent Lovegrove an escrow account disclosure statement in July 2014. ECF No. 53 at *32-38.

In April 2014, Lovegrove wrote to the three major CRAs: Equifax Credit Information Services, Inc. ("Equifax"), Experian, and Transunion, L.L.C. ("Transunion") and claimed "Bank of America has mistakenly reported to you that I owe a mortgage debt that was not discharged in bankruptcy. Therefore, remove any information regarding the Bank of America mortgage . . . ." ECF No. 50-8 at *2. The letter purports that a copy was sent to Ocwen. In June 2014, shortly before filing his Complaint in this case, Lovegrove wrote to Equifax, Experian, and Transunion again. This time, he wrote "Ocwen Home Loan Servicing, L.L.C. has mistakenly reported to you that I owe a mortgage debt that was not discharged in his [sic] bankruptcy. Therefore, remove any information regarding Ocwen Home Loan Servicing, L.L.C. . . . ." Id. at *5. In July 2014, Ocwen received a dispute notification from Experian, and, the same day, Ocwen sent a notice to "all consumer reporting agencies to which it reports removing any reporting as to Mr. Lovegrove's discharged mortgage debt." ECF No. 50-1 at *2-3.

## II.

Ocwen moves for summary judgment as to both the FDCPA claim and FCRA claim. Regarding the FDCPA claim, Ocwen argues that Lovegrove's complaint is really an attempt to create a private right of action to enforce the bankruptcy discharge injunction and, therefore, the FDCPA claim is preempted by the Bankruptcy Code. Further, even if Lovegrove can bring a FDCPA claim for the actions alleged in the complaint, none of Ocwen's communications were in connection with collection of a debt because they all carried clear disclaimers stating that if the debt had been discharged in bankruptcy the statements were for informational purposes only. As to the FCRA claim, Ocwen argues it cannot be liable for failing to correct Lovegrove's credit report until after it received notice from a CRA. Ocwen did not receive notice of a dispute from a CRA until June 2015 and corrected the information on Lovegrove's credit report within the statutory thirty-day period.

4

In opposition, Lovegrove claims Ocwen has waived any argument that the Bankruptcy Code preempts his claim under the FDCPA because it was not raised as an affirmative defense, and, regardless, Lovegrove can maintain a private action for Ocwen's alleged acts under the FDCPA because Ocwen is not a creditor but rather a debt collector. Further, Lovegrove argues there is an issue of fact as to whether the account statements and other documents sent to Lovegrove were an attempt to collect a debt. Lovegrove also maintains that the FDCPA provides a cause of action for Ocwen's alleged false reports to the CRAs. Finally, Lovegrove asserts that Ocwen violated the FCRA by reporting information to the CRAs Ocwen knew was diputed.

Ocwen replied that it was not required to expressly plead preemption because preemption does not apply to the interaction of two federal statutes, i.e., the Bankruptcy Code and the FDCPA. Ocwen also claims that Lovegrove has inappropriately attempted to add a claim by arguing that the FDCPA provides a cause of action for alleged false reporting to the CRAs.

After oral argument, the court ordered supplemental briefing regarding the interplay between the Bankruptcy Code, the FDCPA, and the parties. In his brief, Lovegrove continues to maintain that Ocwen is not a creditor under the Bankruptcy Code and not subject to the exceptions to the discharge injunction in 11 U.S.C. § 524(j). Ocwen replied that as the authorized agent of the holder of the note, Bank of America, Ocwen does fall under the § 524(j) exception, and, as to Lovegrove's credit reporting claim under the FDCPA, that claim is both precluded by the Bankruptcy Code and untimely.

## III.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Glynn v. EDO Corp.</u>, 710 F.3d 209, 213 (4th Cir. 2013). When making this

determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted) (citing Tolan v. Cotton, 134 S Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the non[-]moving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary

6

judgment the Court must determine that no reasonable jury could find for the non[-]moving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

## A.

Count One of the Amended Complaint alleges that Ocwen violated the FDCPA by sending monthly bills to Lovegrove, demanding payment of the debt from the Bank of America mortgage, and making false representations as to the consequences of not making any payments. Ocwen claims it is entitled to summary judgment because Lovegrove is masquerading an alleged violation of the bankruptcy discharge injunction as a FDCPA claim, and, even if he could maintain a FDCPA action, there is no issue of fact that Ocwen's communications were not in connection with collection of a debt. The court agrees that the Bankruptcy Code precludes Lovegrove's FDCPA claim under these circumstances, and, regardless, even if Lovegrove could bring a FDCPA claim, Ocwen is entitled to summary judgment on Count One.[1]

## 1.

In Kokoszka v. Belford, 417 U.S. 642 (1974), the Supreme Court addressed the interplay between the Consumer Credit Protection Act ("CCPA"), 15 U.S.C. § 1601 et seq., of which the FDCPA is a part, and the Bankruptcy Code. The issue before the Court in that case was whether an income tax refund could be considered "property" under the Bankruptcy Code, and, if so, whether the CCPA's wage garnishment provision exempted a portion of the tax refund from the jurisdiction of the bankruptcy trustee. Id. at 643. Upon reaching the second inquiry, the Court noted that "Congress did not enact the Consumer Credit Protection Act in a vacuum. The drafters of the statute were well aware that the provisions and the purposes of the Bankruptcy Act and the

---

[1] Ocwen has not waived any argument that the Bankrupcty Code precludes Lovegrove's claim under the FDCPA. While "preemption" is considered an affirmative defense, it only applies to conflicts between a state law and federal law, not a potential conflict between two federal laws. Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010).

[CCPAA] would have to coexist." Id. at 649. The Court examined the legislative history of the CCPA and determined that "Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place by eliminating 'an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption' and a consequent increase in personal bankruptcies." Id. at 651 (quoting H.R. Rep. No. 1040, 90th Cong., 1st Sess., 20 (1967)). The Court concluded that the CCPA "sought to prevent consumers from entering bankruptcy in the first place. However, if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act." Id.

The Fourth Circuit has not addressed whether a FDCPA claim based on communications sent to a debtor after he receives a Chapter 7 discharge is precluded by the Bankruptcy Code. Other circuit courts have reached different conclusions under circumstances factually distinct from those presented in this case.

The Second and Ninth Circuits have concluded that the Bankruptcy Code precludes FDCPA claims because "'debtors are protected in bankruptcy proceedings—and by discharge afterward." Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010); Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 510 (9th Cir. 2002) ("Nothing in either Act persuades us that Congress intended to allow debtors to bypass the [Bankruptcy] Code's remedial scheme when it enacted the FDCPA. While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code."). In Simmons, the debtors' bankruptcy case was still active when they filed their FDCPA claims in the federal district court. Simmons, 622 F.3d at 94-95. In Walls, however, the Ninth Circuit went further and held that FDCPA claims based on a violation of a discharge injunction are precluded by the Bankruptcy Code. Walls, 276 F.3d at 510; see also Diamante v. Solomon & Solomon, P.C., No. 1:99-cv-1339, 2001 WL 1217226, at *6 (N.D.N.Y. Sept. 18, 2001) ("To permit Plaintiff to circumvent [11 U.S.C. §

8

524] and its remedy by bringing a claim under the FDCPA, which provides for damages and attorneys' fees, would directly contravene the Bankruptcy Code's remedial scheme. . . . . Finally, if the reasoning of the courts finding no preclusion were followed, it would render the Bankruptcy Code's remedy for violations of § 524 superfluous because in most, if not all, cases, the plaintiff would choose the potentially more lucrative remedies found in the FDCPA.")

The Third Circuit has determined that FDCPA claims are not precluded by the Bankruptcy Code so long as there is "no direct conflict between the [Bankruptcy] Code or [Bankruptcy] Rules and the FDCPA . . . ." Simon v. FIA Card Servs., N.A., 732 F.3d 259, 274 (3d Cir. 2013); see also Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004) ("When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other" due to "irreconcilable conflict between the two statutes or a clearly expressed legislative decision that one replace the other."). In Randolph, three cases were consolidated on appeal that were factually similar. The factual circumstances the Seventh Circuit used for illustrative purposes involved an unsecured creditor's alleged violation of the automatic stay protecting debtors while the bankruptcy proceeding is open. Randolph, 368 F.3d at 728.

Simon also involved an active bankruptcy proceeding. In that case, a law firm sent a debt collection letter and a notice requesting an examination of the debtors pursuant to Federal Rule of Bankruptcy Procedure 2004 regarding unsecured credit card debt. Id. at 262. The Simon court undertook a narrow inquiry in order to determine whether any of the FDCPA claims were precluded by the Bankruptcy Code. Simon, 732 F.3d at 278. While finding several claims were not precluded, the Simon court did conclude that the plaintiff's claims under § 1692e(11) of the FDCPA were precluded because it would be impossible to comply with both § 1692e(11) and Rule 2004 of the Federal Rules of Bankruptcy Procedure because compliance with one would necessarily entail a violation of the other. Id. at 280. 15 U.S.C. § 1692e(11) requires a debt collector to include a "mini-

9

<u>Miranda</u>" notice in all communications stating that the communication is sent from "a debt collector attempting to collect a debt and that 'any information obtained would be used for that purpose.'" <u>Id.</u> Rule 2004 permits a creditor in a bankruptcy proceeding to serve a debtor with a subpoena in order to conduct an examination of the debtor covering a "wide range of topics" as to "'any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.'" <u>Id.</u> at 278 (quoting F. R. Bankr. P. 2004(b)). Because the Bankruptcy Code "forbids 'any act to collect, assess, or recover a claim against the debtor that arose before the commencement' of the bankruptcy proceeding[,]" the <u>Simon</u> court ruled that a creditor would violate the automatic stay by including a "mini-<u>Miranda</u>" notice on the Rule 2004 subpoena. <u>Id.</u> at 280 (quoting 11 U.S.C. § 362(a)(6)). Thus, the plaintiff's claim under § 1692e(11) was precluded. <u>Id.</u>

The court agrees with the <u>Walls</u> and <u>Simmons</u> courts that Lovegrove's allegations stem from a violation of the discharge injunction, and Lovegrove's remedy lies with the bankruptcy court's contempt power. Courts across the country, including two courts in the Fourth Circuit, agree that a mortgage servicer like Ocwen "has standing to participate in a debtor's bankruptcy case by virtue of its pecuniary interest in collecting payments under the terms of the note and mortgage." <u>In re Eads</u>, 417 B.R. 728, 739 n.12 (Bankr. E.D. Tx. 2009) (citing <u>In re Tainan</u>, 48 B.R. 250, 252 (Bankr. E.D. Pa. 1985; <u>Bankers Trust (Del.) v. 236 Beltway Inv.</u>, 865 F. Supp. 1186, 1191 (E.D. Va. 1994); <u>In re O'Dell</u>, 268 B.R. 607, 618 (N.D. Ala. 2001) <u>aff'd</u> 305 F.3d 1297, 1302 (11th Cir. 2002); <u>In re Miller</u>, 320 B.R. 203, 206 n.2 (Bankr. N.D. Ala. 2005); <u>In re Woodberry</u>, 383 B.R. 373, 379 (Bankr. D.S.C. 2008)). Accordingly, Ocwen, as a loan servicer for Bank of America, "is to be considered a creditor" and entitled to the exception to the bankruptcy discharge under § 524(j). <u>In re Gulley</u>, 436 B.R. 878, 892 (Bankr. N.D. Tx. 2010) (citing <u>In re Eads</u>, 417 B.R. at 739). The purpose of the discharge injunction is to protect debtors after bankruptcy, but it does not provide debtors a private right of action. To allow Lovegrove to assert a private right of action under the FDCPA for Ocwen's actions

10

would circumvent the purpose of the discharge injunction. However, even under the <u>Simon</u> court's more narrow inquiry, Lovegrove's FDCPA claim fails.

2.

Lovegrove's FDCPA claims arise under 15 U.S.C. §§ 1692f and 1692e(2) and (10). Section 1692f prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." Section 1692e(2) prohibits a debt collector from making a "false representation of the character, amount, or legal status of any debt," and § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer."

a.

When a debtor receives a discharge in bankruptcy, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). Certain exceptions to the discharge injunction exist, however, and any act by a secured creditor that "is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien" does not violate the injunction. 11 U.S.C. § 524(j)(3). This is because the bankruptcy discharge does not extinguish a secured creditor's in rem rights as to the debtor's property; the discharge only prohibits an in personam claim against the debtor. <u>In re Tucker</u>, 516 B.R. 340, 346 (Bankr. W.D. Va. 2014) (citing <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 84 (1991)). As such, courts generally agree that a secured creditor may send informational statements to a debtor without violating the discharge injunction so long as the creditor's communications do not demand payment of the debt. <u>See</u> <u>In re Tucker</u>, 516 B.R. at 346; <u>In re Canning</u>, 706 F.3d 64, 71-72 (1st Cir. 2013); <u>In re Pennington-Thurman</u>, 499 B.R. 329, 332 (B.A.P. 8th Cir. 2013); <u>In re Mele</u>, 486 B.R. 546, 557-58 (Bankr. N.D. Ga. 2013); <u>Anderson v. Bank</u>

11

of Am., No. 6:12-cv-00017, 2012 WL 4458474, at *2-4 (W.D. Va. July 11, 2012); In re Jones, Bankr. No. 08-05439-AJM-7, Adv. No. 09-50281, 2009 WL 5842122, at *3 (Bankr. S.D. Ind. Nov. 25, 2009).

**b.**

Under the Simon inquiry, a direct conflict exists between the Bankruptcy Code and the FDCPA. First, the Bankruptcy Code does not provide for a private right of action for a violation of the discharge injunction. Rather, the code provides a remedy through the bankruptcy court's civil contempt power. Thus, a debtor who believes a creditor has violated the discharge injunction may move to reopen the bankruptcy proceeding and ask the bankruptcy court to determine whether the injunction was indeed violated. See Anderson, 2012 WL 4458474, at *2 (citations omitted).

Second, the Bankruptcy Code and the FDCPA are in conflict because each statute requires a different standard of proof and carries a different scienter requirement, and each provides for a different remedy. Under the Bankruptcy Code, a debtor must show, by clear and convincing evidence, that the creditor violated the discharge injunction and that the violation was willful, or, in other words, "an intentional act with knowledge of the discharge injunction." Id. at *3; In re Tucker, 526 B.R. 616, 621 (Bankr. W.D. Va. 2015) (citing In re Harlan, 402 B.R. 703, 715 (Bankr. W.D. Va. 2009)). If the discharge injunction was violated, the bankruptcy court may hold the creditor in contempt and order sanctions equal to the debtor's actual damages as well as punitive damages but not damages for "pain and suffering" or "'emotional distress.'" In re Tucker, 526 B.R. at 622 (citing In re Gecy, 510 B.R. 510, 524 (Bankr. D.S.C. 2014)). The FDCPA, however, is a strict liability statute, the burden of proof is a preponderance of the evidence, and debtors may potentially recover damages for emotional harm. See Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 389 (4th Cir. 2014) (citing Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 375 (4th Cir. 2012)); Ademiluyi

Case 7:14-cv-00329-MFU-RSB   Document 69   Filed 08/26/15   Page 12 of 29   Pageid#: 618

v. PennyMac Mortg. Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 536 (D. Md. 2013) (citing McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 957-58) (9th Cir. 2011)).

Third, the Bankruptcy Code permits a creditor to send informational statements to a post-discharge debtor where the FDCPA's more strict provisions do not. Indeed, § 524(j) explicitly permits a creditor holding "a security interest in real property that is the principal residence of the debtor" to seek "periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien" after the debt is discharged in bankruptcy. Under Lovegrove's reading of the FDCPA, such an act would constitute a false representation that a debt exists because the debt was discharged, but Lovegrove's argument fails to appreciate that the lien on the house he continues to live in still remains secured and valid after his personal bankruptcy discharge. Such communications from Ocwen are thus proper given Lovegrove's clear intention to continue living in the house. In re Mele, 486 B.R. at 556. Thus, were the FDCPA claim not precluded, a creditor would be forced to choose between exercising its rights under § 524(j) and risking potential liability under the FDCPA or foregoing those rights in order to shield itself from a potential FDCPA claim. In this sense, the Seventh Circuit's decision in Randolph and the Third Circuit's decision in Simon are distinguishable. Both of those cases involved violations of 11 U.S.C. § 362, the automatic stay, and § 362 contains no similar exception for creditors with a security interest in real property. Indeed, under § 362 even those secured creditors must seek leave of court before they can perform any act to enforce such a lien. 11 U.S.C. § 362(d).

Furthermore, the "mini-Miranda" notice required under 15 U.S.C. § 1692e(11) is directly contrary to the purpose of the discharge injunction. The discharge injunction is meant to prevent a creditor from personally collecting a debt from the debtor, and, yet, the FDCPA requires the creditor to inform the debtor that any communication is in connection with collection of a debt. Failure to do so is a violation of § 1692(e). While creditors may attempt to inoculate the "mini-

13

*Miranda*" notice by adding disclaimers such as those appearing on the communications at issue here, that does not remedy this direct conflict between the Bankruptcy Code and the FDCPA. See *Garfield v. Ocwen Loan Servicing, LLC*, 526 B.R. 471, 479-80 (W.D.N.Y. 2015).

Finally, the fact that many courts recognize loan servicers as creditors in bankruptcy proceedings highlights the conflicts between these provisions even more. The FDCPA applies only to debt collectors, not creditors. While Ocwen may have begun servicing the debt after it was in default thus qualifying it as a "debt collector" under the FDCPA, it is still considered a creditor for purposes of the Bankruptcy Code. Thus, Ocwen is left in the precarious and baffling quagmire of being subject to two different statutes, one of which expressly permits Ocwen to do a certain act that is forbidden by the other.

Accordingly, the court finds that Lovegrove's FDCPA claim is precluded by the Bankruptcy Code because the statutes are in irreconcilable conflict. Even if Lovegrove's FDCPA claim was not precluded by the Bankruptcy Code, however, Ocwen is entitled to summary judgment because the communications were not in connection with the collection of a debt.

### 3.

In order to establish a violation of the FDCPA, the plaintiff must have been a "consumer," the defendant must have been a "debt collector," and the defendant must have violated the FDCPA through an act or omission. *Yarney v. Ocwen Loan Servicing, LLC*, 929 F. Supp. 2d 569, 574-75 (W.D. Va. 2013). Lovegrove is a consumer under the FDCPA because he is "allegedly obligated to pay [a] debt." 15 U.S.C. § 1692a(3). Assuming Ocwen began servicing the debt after it was in default, then Ocwen would qualify as a debt collector under the FDCPA. *Yarney*, 929 F. Supp. 2d at 575 (citing *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 360 n.4 (6th Cir. 2012)). The issue here is whether Ocwen violated the FDCPA. As noted above, the FDCPA prohibits collecting a debt through false representations or deceptive, unfair, and unconscionable means. See 15 U.S.C. §§

14

1692e and 1692f. Thus, the FDCPA first requires that the defendant's actions be taken in connection with the collection of a debt. See Boosahda v. Providence Dane LLC, 462 F. App'x 331, 333 n.3 (4th Cir. 2012).

To determine if the communications are in connection with the collection of a debt, the court must focus on 'the capacity of the statement to mislead; evidence of actual deception is unnecessary'" because the FDCPA is a strict liability statute. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 139 (4th Cir. 1996). In order to determine whether Ocwen's actions violated the FDCPA, the court must assess the communications under the "least sophisticated consumer standard." Russell, 763 F.3d at 394. The least sophisticated consumer is, essentially, "'the single most unsophisticated consumer who exists.'" Yarney, 929 F. Supp. 2d at 575 (quoting Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994)). However, this standard "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Nat'l Fin. Servs., 98 F.3d at 136 (citing Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). Under this analysis, neither the October 5 letters, nor the account statements, were in connection with collection of a debt.

**a.**

The cases Lovegrove relies on in support of his claim that the communications at issue here were in connection with collection of a debt are unpersuasive.

In Yarney, the plaintiff executed a settlement agreement with Wells Fargo Bank under which Wells Fargo accepted the plaintiff's deed in lieu of foreclosure, and the plaintiff agreed to voluntarily dismiss a lawsuit against the bank. Ocwen was the loan servicer for the Wells Fargo mortgage loan. Yarney, 929 F. Supp. 2d at 572. After executing the settlement agreement and transferring the deed to Wells Fargo, however, the plaintiff continued to receive monthly bills from Ocwen, received "a

15

Notice of Intent to Force Place Insurance," and a bill for the forced place insurance "though Plaintiff no longer owned the property or resided there." Id. Wells Fargo admitted notifying Ocwen of the settlement agreement, and Wells Fargo's attorney "'reminded Ocwen to cease its billing of [the plaintiff]'" after plaintiff's counsel alerted Wells Fargo of the continued billing. Id. at 573. In addition, plaintiff's counsel notified Ocwen of the settlement agreement and that plaintiff was represented by counsel. Nevertheless, the plaintiff continued to receive monthly bills and received "numerous phone calls . . . from Ocwen representatives, sometimes multiple times per day." Id. Later on, Ocwen began to send payoff quotes to the plaintiff's attorney though the plaintiff never requested any payoff quotes. Id. The court granted summary judgment for the plaintiff on her claim under § 1692e(2)(A) because after the execution of the settlement agreement Ocwen continued to send monthly bills, sent notices that plaintiff's escrow account would be charged for an insurance policy premium, sent the plaintiff's attorney "unsolicited payoff quotes," and made "repeated phone calls . . . seeking to collect payments from [plaintiff]." Id. at 578. Here, although Lovegrove has not vacated the house, there are no allegations of any phone calls or payoff quotes that rises to the level of the harassing behavior present in Yarney.

Lovegrove also relies on the dissenting opinion from Ramsay v. Sawyer Property Management of Maryland LLC, 593 F. App'x 204 (4th Cir. 2014), cert. denied sub nom., Ramsay v. Tapper, 135 S. Ct. 2838 (June 15, 2015). In that case, a creditor's attorney stamped the "mini-Miranda" notice on a state court order directing the plaintiff to appear in court. The plaintiff failed to appear, and the creditor's attorney stamped the same language on a new court order directing the plaintiff to appear for a show cause hearing. The plaintiff again failed to appear and was held in contempt. Ramsay, 593 F. App'x at 205-06. The plaintiff brought suit alleging that the stamped language on the state court orders violated § 1692e. The district court granted the defendant's motion to dismiss, and the court of appeals affirmed because the "documents plainly stated that they

16

were orders of the court, and set forth both the name of the court and the signature of a judge." Id. at 209. Further, "the stamped language did not alter these clear representations that the documents were issued by a court and required compliance with the court's directives. . . . In fact, the stamped language was consistent with the overall message of the court orders . . . ." Id. Finally, the Fourth Circuit rejected the plaintiff's argument that the stamped language was false because the language appeared on the portion of the documents the creditor's attorney was required to complete. Id.

Dissenting in part, Judge Gregory felt the plaintiff "plausibly alleged that the stamp was deceptive or misleading to the least sophisticated consumer." Id. at 510 (Gregory, J., dissenting in part) (citing Nat'l Fin. Servs., 98 F.3d at 136). Judge Gregory further disagreed with the majority's conclusion that the "mini-Miranda" language was not false because the stamped language appeared on a court order, and "a court order is expressly a communication between the court and debtor, directing the debtor to appear or perform some action," not a communication from a debt collector. Id. (citing Black's Law Dictionary 1123 (7th ed. 1999). This dissent is distinguishable, however, as the motion before this court is pursuant to Rule 56 rather than Rule 12. There must be a genuine issue of fact as to whether the statements here were deceptive, false, or misleading, not just a plausible allegation to that effect.

Finally, Lovegrove relies on language from a Seventh Circuit opinion in a FDCPA class action suit, Johnson v. Revenue Management Corp., 169 F.3d 1057 (7th Cir. 1999), to argue that a question of fact exists as to whether the documents at issue here were attempts to collect a debt. In Johnson, another case reviewing a motion to dismiss ruling, collection agencies sent letters containing paraphrased versions of the notice required under 15 U.S.C. § 1692g. Consolidating two class actions involving the same language on appeal, the Johnson court noted that "[u]nsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth

17

grade. To learn how an unsophisticated reader reacts to a letter, the judge may need to receive evidence." Id. at 1060. Again, such language from a court reviewing a complaint at the Rule 12 stage is unpersuasive here especially given that the Johnson court went on to explain that "[i]f all the plaintiffs have to go on is the language of these letters, they must lose in the end." Id.

**b.**

Exhibit 1 to Lovegrove's response in opposition to the motion for summary judgment is plainly not an attempt to collect a debt. See ECF No. 53 at *26-27. The letter is non-threatening, purely informational, makes no mention of any balance due or demand for payment, and its subject matter is entirely limited to "a potential foreclosure sale." Id. at *26. As noted above, the discharge may have extinguished Lovegrove's personal liability for the debt under the mortgage, but it did nothing to the lien on the Moneta property that secured Lovegrove's promise to pay the mortgage loan. In re Tucker, 516 B.R. at 346. Foreclosure is an in rem action that survives the bankruptcy discharge. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991); In re Collins, 474 B.R. 317, 320 (Bankr. D. Me. 2012). Most importantly, while the letter does contain the "mini-Miranda" notice required on all communications from debt collectors, that sentence is followed by clear, unambiguous language in bold and italicized font stating that "if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt." Even the least sophisticated consumer is presumed to read documents such as this one with care. Accordingly, Lovegrove's Exhibit 1 was not in connection with collection of a debt.

Lovegrove claims the communications in this document contain false representations therefore triggering FDCPA liability. This assertion, however, fails to appreciate that FDCPA liability hinges on an attempt to collect a debt. If the communication is not an attempt to collect a debt, it is of no consequence for FDCPA purposes that the letter contains a false representation. See

18

15 U.S.C. §§ 1692e and 1692f. Nonetheless, even if this letter were an attempt to collect a debt, which plainly by its own terms it is not, the court does not find this document contains any false or misleading representations.

According to Lovegrove, the "Consequences of Foreclosure" section contains three false or misleading statements: (1) "a foreclosure on your credit record will damage your credit rating and may impair your ability to get credit in the future"; (2) "after foreclosure, if the proceeds from the sale of your property were less than the amount you owe the lender, you may, under certain circumstances, be liable for that difference"; and (3) "if you do not pay the lender the deficiency liability as explained above . . . the IRS may consider the unpaid debt to be part of your taxable income." ECF No. 53 at *27. Lovegrove believes these statements are false or misleading because after receiving a Chapter 7 discharge of his personal liability as to the Bank of America loan, he would not be subject to any negative credit reporting, deficiency liability, or tax ramifications after a foreclosure sale of the Moneta property. Where Lovegrove's argument falters is his attempt to insert a subjective inquiry into the FDCPA analysis. It is not the subjective understanding of the plaintiff that plays any role in this analysis, rather it is the unsophisticated but reasonable consumer which "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Nat'l Fin. Servs., 98 F.3d at 136. Furthermore, none of these statements are objectively false. A foreclosure on a credit report does negatively impact an individual's credit score and his or her ability to obtain credit. Neither are the statements regarding any potential deficiency liability and tax ramifications objectively false. Additionally, both the deficiency liability and the tax ramifications

19

disclaimers contain the word "may." They do not say the reader "will" be liable for any deficiency or taxable income. These statements plainly are not false or misleading. [2]

In summary, the court finds that this letter is not an attempt to collect a debt, and, in addition, it does not contain any false or misleading statements. Because FDCPA claims cannot rest on a plaintiff's subjective, idiosyncratic interpretation of the statements in a letter from a debt collector, Lovegrove's FDCPA claim as to these statements fails.

c.

Ocwen's other communications with Lovegrove were not in connection with collection of a debt as well. Ocwen's Exhibit A, ECF No. 50-2 at *2-3, informs Lovegrove that Ocwen is the new servicer of the mortgage loan. While it does provide a "Total Due" amount in the body of the letter, the letter makes no demand for payment. Id. at *2. Further, at the bottom of the page, in bold and italicized font, the letter states: "[I]f the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt." Id. The letter also provides Lovegrove with instructions on how to dispute the validity of the debt by submitting notice of the dispute in writing. Finally, the information provided in this letter fits the definition of the "validation notice" required under 15 U.S.C. § 1692g. As such, this statement as a whole does not represent an attempt to collect a debt.

Likewise, the monthly account statements and escrow statements are not attempts to collect a debt. See ECF No. 50-3 at *2-19; ECF No. 53 at *32-38. The account statements do provide information regarding the "Total Amount Due" as well as a payment coupon. However, the statements also contain a section in the middle of the statement titled "Important Messages" in bold font and enclosed by a box. That section of the statement contains the following two messages:

---

[2] Even if FDCPA claims did provide for some sort of subjective inquiry as to the truth of any of these statements, the fact that the deficiency liability and tax ramification statements contain the word "may" is dispositive here because these statements do not indicate that Lovegrove "will" be responsible for any potential deficiency and resulting tax liability.

> If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement.
>
> Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. Payments received are to be applied in accordance with your mortgage note. Payments will be first applied to bring your loan contractually current. Any additional funds received will be applied to outstanding fees and advances prior to being applied to principal.

Id. at *2. On the back of the statement, under the section titled "IMPORTANT BANKRUPTCY INFORMATION," the statement reads:

> If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have any questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us at 1-888-554-6599.

Id. at *3. Given the disclaimers in the "Important Messages" and "IMPORTANT BANKRUPCTY INFORMATION" sections of the account statements, these statements are not in connection with collection of a debt. See Anderson, 2012 WL 4458474, at *4; In re Mele, 486 B.R. at 557-58.[3] There is no evidence, much less an allegation, that Lovegrove even called Ocwen at the number provided on the statement to request Ocwen stop sending him monthly statements. Id. The escrow documents list the "Total Shortage" on one page but there is no demand for payment or any other similar language such as a payment due date or "payment past due." The documents also contain the same disclaimer at the bottom of each page that if the debt is in active bankruptcy, the letter is not an attempt to collect a debt.

All of these communications were informational and non-threatening in nature and contained disclaimers that if the debt was in bankruptcy the communications were not an attempt to collect a debt. This is not a case where a creditor harassed the debtor or tried to pressure the debtor

---

[3] While Anderson and Mele were cases involving alleged violations of a bankruptcy discharge injunction, both courts were tasked with deciding whether the creditor's communications were an attempt to collect on a debt.

21

into making payments through multiple phone calls or threats. Nor is this a case where the debtor signed a modification agreement or turned over the deed to the property and the creditor continued to demand payments. Indeed, Lovegrove has not even alleged that there were any other communications from Ocwen other than these letters and account statements. All of the documents contained clear disclaimers that if the subject debt had been discharged in bankruptcy that the communication was not an attempt to collect a debt. Because even the least sophisticated consumer is expected to read these communications with care, none of the communications Ocwen sent to Lovegrove were in connection with collection of a debt. Further, none of the documents contained any objectively false or misleading representations. As such, the court finds no genuine issue of material fact as to the FDCPA claim, and Ocwen is entitled to summary judgment on Count One.

**B.**

In Count Two of the Amended Complaint, Lovegrove claims Ocwen violated the FCRA by providing inaccurate or false information to the CRAs when it had reasonable cause to believe the information was inaccurate. Ocwen asserts summary judgment is proper as to Count Two because it had no duty under the FCRA until Lovegrove notified a CRA of a dispute with Ocwen's reporting. When Lovegrove did notify a CRA, Ocwen remedied the dispute immediately.

15 U.S.C. § 1681s-2 prohibits a person from providing inaccurate information "relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). A person has "reasonable cause to believe that the information is inaccurate" if the person has "specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681-s2(a)(1)(D). The statute further requires those who "regularly and in the ordinary course of business furnish[] information to one or more

consumer reporting agencies" to correct and update information provided to consumer reporting agencies so that the information is "complete and accurate." 15 U.S.C. § 1681s-2(a)(2).

There is no private right of action under § 1681s-2(a). 15 U.S.C. § 1681s-2(c); <u>Saunders v. Branch Banking & Trust Co.</u>, 526 F.3d 142, 149 (4th Cir. 2008). A private right of action does exist under § 1681s-2(b) which requires a "creditor who has been notified by a CRA that a consumer has disputed information furnished by that creditor" to investigate the dispute, "'report the results of the investigation to the consumer reporting agency,'" and, if any information was inaccurate, report the results of the investigation to the other consumer reporting agencies. <u>Johnson v. MBNA Am. Bank, NA</u>, 357 F3d 426, 429-30 (4th Cir. 2004) (quoting 15 U.S.C. § 1681s-2(b)). In order to maintain an action under § 1681s-2(b), the consumer must notify "a CRA that he disputes the accuracy of an item in his file . . . ." <u>Saunders</u>, 526 F.3d at 148; <u>Brown v. Wal-Mart Stores, Inc.</u>, 507 F. App'x 543, 547 (6th Cir. 2012); <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009).

## 1.

Lovegrove wrote to the CRAs on two occasions. On April 3, 2014, Lovegrove wrote that "Bank of America has mistakenly reported to you that I owe a mortgage debt that was not discharged in my bankruptcy. Therefore, remove any information regarding the Bank of America mortgage . . . ." ECF No. 50-8 at *2. The letter makes no mention that Ocwen was mistakenly reporting any information to the CRAs. The only reference to Ocwen in the letter is that they were allegedly sent a copy. On June 25, 2014, Lovegrove again wrote to the CRAs, but this time he claimed Ocwen had "mistakenly reported to you that I owe a mortgage debt that was not discharged in . . . bankruptcy." <u>Id.</u> at *5. Ocwen received notice of the dispute from Experian on July 21 and "sent a Universal Data Form to all [CRAs] to which it reports removing any reporting as to Mr. Lovegrove's discharged mortgage debt." ECF No. 50-1 at *2-3. Because Lovegrove cannot maintain

a cause of action under the FCRA based on his disputes sent directly to Ocwen, there is no genuine issue of material fact that Ocwen complied with its duties under 15 U.S.C. § 1681s-2(b).

2.

In his reply to Ocwen's motion for summary judgment, Lovegrove argued that Ocwen violated the FDCPA through its alleged inaccurate reporting to the CRAs under 15 U.S.C. § 1692e(8) and 15 U.S.C. § 1692c(b). None of Lovegrove's allegations in Count One of the Amended Complaint, the FDCPA claim, make any reference to Ocwen's reporting of his debt. Likewise, none of the allegations in Count Two of the Amended Complaint, the FCRA claim, incorporate the FDCPA. A plaintiff cannot rely on a response to a motion for summary judgment as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 617 (4th Cir. 2009) (citing Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 (4th Cir. 2008)). However, Lovegrove's counsel represented during oral argument that he made Ocwen aware of these claims through answers to interrogatories during discovery. See ECF No. 50-7 at *3-4. Thus, the court will address Lovegrove's inaccurate reporting claims under the FDCPA.

This claim fails on two grounds. As noted above, Lovegrove's claim under §§ 1692c(b) and 1692e(8) is precluded by the Bankruptcy Code. See also Garfield, 526 B.R. at 480. In addition, for the reasons stated below, this claim is time-barred.

a.

15 U.S.C. § 1692c(b) prohibits debt collectors from communicating with a consumer reporting agency in connection with the collection of a debt unless it is otherwise permitted by law. 15 U.S.C. § 1692e(8) prohibits debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." As a threshold issue,

24

FDCPA claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k.[4]

Generally, an action under the FDCPA accrues "when a communication violating the FDCPA is sent." Akalwadi v. Risk Mgmt. Alts., Inc., 336 F. Supp. 2d 492, 501 (D. Md. 2004) (citing Peoples v. Wendover Funding, 179 F.R.D. 492, 499 (D. Md. 1998)). Courts across the country have grappled over whether the FDCPA encompasses continuing, or serial, violations of the same type or whether the action commences from the date of the first violation. See Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 310, 316-17 (D. Md. 2014) (collecting cases both agreeing and disagreeing with the continuing violation theory). The Bey court determined that "[d]eclining to restart the statute of limitations for related subsequent communications is consistent with the statutory text, Fourth Circuit precedent, and even the legislative history" of the FDCPA. Id. at 317.

In Akalwadi, the plaintiff obtained a credit report in October 2000 and realized it contained inaccurate debt information. In July 2002, the plaintiff obtained another credit report containing the same inaccurate information even though he had disputed the information with the creditor in May 2002. The court determined that the plaintiff's FDCPA claim based on the October 2000 credit report was time-barred because the complaint was filed in November 2002. The statute of limitations defense failed as to the plaintiff's FDCPA claim based on the July 2002 report. Akalwadi, 336 F. Supp. 2d at 501.

In Wilhelm v. Credico, Inc., 455 F. Supp. 2d 1006 (D.N.D. 2006), the plaintiff sued two separate debt collectors for allegedly violating 15 U.S.C. § 1692e(8). In 2003, one of the defendants, Credico Inc., mailed a letter to the plaintiff informing him of its intention to sue on an outstanding debt owned by the other defendant in that case, Pinnacle Credit Services. The plaintiff sent a letter to Credico disputing the debt and then filed suit against Credico and Pinnacle in 2005. The plaintiff's

---

[4] The FCRA carries a two-year statute of limitations. 15 U.S.C. § 1681p.

Case 7:14-cv-00329-MFU-RSB   Document 69   Filed 08/26/15   Page 25 of 29   Pageid#: 631

credit reports from 2004 listed the Pinnacle debt but did not indicate that the debt was disputed. Pinnacle claimed that Credico did not report to Pinnacle that the debt was disputed, and even if Credico had reported the debt as disputed, the plaintiff's claim was untimely. Pinnacle argued that the suit was time-barred because it was filed almost two years after Pinnacle "'knew or should have known'" the debt was disputed. Wilhelm, 455 F. Supp. 2d at 1009. The plaintiff claimed the last violation occurred as late as March 2005 and that date should be used for statute of limitations purposes. The district court granted Pinnacle's motion for summary judgment and found that the plaintiff's claim under 15 U.S.C. § 1698e(8) accrued when the plaintiff first disputed the debt with Credico. Id. at 1009-10. The Eighth Circuit affirmed because there was "no evidence that these [credit] reports were made after Pinnacle learned of the dispute in mid-December [2003]. In any event, a claim based upon Pinnacle reports in December 2003 is clearly time-barred, and [the plaintiff] conceded at oral argument he presented no evidence that Pinnacle communicated any credit information about [the plaintiff] to any person within the one-year limitations period." Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008).

The Sixth Circuit Court of Appeals addressed similar claims as those raised here in Purnell v. Arrow Financial Services, LLC, 303 F. App'x 297 (6th Cir. Dec. 16, 2008) (per curiam). In that case, the plaintiff alleged FDCPA claims based on the defendant creditor's reporting of a disputed debt to Equifax. The defendant in that case, Arrow, sent automatic monthly reports to Equifax. The plaintiff disputed the debt owed to Arrow in 2001, and Arrow reported the debt to Equifax as disputed until June 2004 when the "dispute marker" stopped appearing in Arrow's reports to Equifax. The plaintiff filed suit in September 2005, and Arrow raised the statute of limitations as a defense. The district court dismissed the plaintiff's claims as to Arrow's reporting prior to September 1, 2004, but allowed the claims based on Arrow's reporting after September 1, 2004 to proceed. On appeal, the Sixth Circuit considered Arrow's monthly reports to Equifax as "discrete

26

violations" of the FDCPA. Thus, the court concluded that any monthly reports to Equifax prior to September 1, 2004 were discrete violations barred by the statute of limitations, but any reports that violated the FDCPA and occurred within the limitations period were not time-barred. Purnell, 303 F. App'x at 303.

### b.

When asked about a letter he wrote to Ocwen in November 2012, Lovegrove testified during his deposition that "I believe that right after Ocwen took over the note and then it showed up on my credit report, I wrote to [Ocwen] immediately and . . . the agencies." Lovegrove Dep., at 37:6-13. Thus, Lovegrove himself was aware that Ocwen was reporting the debt, and Ocwen "knew or should have known" at least as early as November 2012 that Lovegrove disputed the debt. Under the Bey case and the cases it followed, November 2012 would be "'the date of the first violation, and subsequent violations of the same type do not restart the limitations period.'" Bey, 997 F. Supp. 2d at 316 (quoting McGhee v. JP Morgan Chase Bank, N.A., No. DKC-12-3072, 2013 WL 4495797, at *7 n.10 (D. Md. Aug. 20, 2013)); see also Martin v. Sessoms & Rogers, P.A., No. 5:09-cv480-D, 2010 WL 3200015, at *3-4 (E.D.N.C. Aug. 12, 2010). Lovegrove filed suit in June 2014, more than one year after disputing the debt. As such, under the single violation theory, his claim regarding Ocwen's continued reporting of that debt is barred.

However, even if the court were to adopt the discrete violations theory from Purnell, Lovegrove's claim under § 1692e(8) is still time-barred because there is no dispute that Ocwen did not report or update any information to the CRAs after May 31, 2013. Exhibit C attached to Ocwen's supplement brief in support of its summary judgment motion is a Transunion credit report dated May 10, 2014. ECF No. 68-4. Under the Ocwen tagline, the "date updated" provides May 31,

27

2013 as the last date information was received from Ocwen.[5] Id. at *6. Exhibit 8 to Lovegrove's deposition is an Experian credit report from April 22, 2014. According to the Ocwen tradeline on that report, the status is "as of May 2013," and there is no indication that Ocwen provided any information regarding the debt after May 2013. The facts here are distinguishable from those in Purnell. Unlike in Purnell, there are no indications here that Ocwen provided automatic monthly reports to the CRAs. Rather, the credit reports all show the last date the Ocwen information was updated as May 2013. Thus, even under the discrete violations theory, there were no other reports made by Ocwen after May 31, 2013, and, therefore, Lovegrove's claims are time-barred because he filed this suit on June 30, 2014, more than one year after Ocwen's last report to the CRAs. Nor is this case like Akalwadi because there is no evidence in the record that Ocwen provided any information to the CRAs within the one-year period before Lovegrove filed suit, and Lovegrove admits that he was aware of the inaccurate reporting as early as November 2012 and wrote to Ocwen again on June 15, 2013 about the inaccurate reporting. See ECF No. 50-6 at *9; ECF No. 53 at *40.[6] Indeed, just as in Wilhelm, there is no evidence here that Ocwen communicated any information to the CRAs within the one-year statute of limitations period. See Wilhelm, 519 F.3d at 418. This is simply not a case where the plaintiff was caught unaware of inaccurate information being reported on his credit report.

Thus, Lovegrove cannot maintain a private right of action under 1681s-2(a), there is no genuine issue of material fact that Ocwen fully complied with its obligations under § 1681s-2(b), and Lovegrove's claim under § 1692(e)(8) is barred by the statute of limitations. Accordingly, Ocwen is entitled to summary judgment on Count Two.

---

[5] TransUnion provides a "Credit Report Explanation" interactive PDF on its website. That document explains that the "Date Updated" field "represents the last time the account information was updated/reported by the data furnisher." Credit Report Explanation, 4, http://www.transunion.com/docs/rev/personal/Credit_Report_Explanations-Interactive_2014-10-02.pdf (last visited August 18, 2015).
[6] Lovegrove's May 2014 letter to Ocwen would not provide another starting point for the statute of limitations either because there is no evidence Ocwen provided any information to the CRAs after May 31, 2013.

28

**IV.**

In conclusion, Lovegrove's claims under the FDCPA fail, and there is no evidence from which a reasonable juror could conclude that Ocwen did not fulfill its obligations under the FCRA. As such, Ocwen's Motion for Summary Judgment, ECF No. 49, is **GRANTED**, and this case will be dismissed.

An appropriate Order will be entered this day.

The Clerk is directed to send copies of this Memorandum Opinion to counsel of record.

Entered:  August 25, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge