**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2158

THOMAS W. LOVEGROVE,

        Plaintiff - Appellant,

  v.

OCWEN HOME LOANS SERVICING, L.L.C.,

        Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Michael F. Urbanski, District Judge. (7:14-cv-00329-MFU-RSB)

Argued: October 27, 2016          Decided: December 20, 2016

Before SHEDD and KEENAN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Keenan and Senior Judge Davis joined.

**ARGUED:** Gary M. Bowman, Roanoke, Virginia, for Appellant. Brett Lawrence Messinger, DUANE MORRIS LLP, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Christopher M. Corchiarino, GOODELL, DEVRIES, LEECH & DANN, LLP, Baltimore, Maryland; Brian J. Slipakoff, DUANE MORRIS LLP, Philadelphia, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

Thomas Lovegrove defaulted on his mortgage in 2009 and received a Chapter 7 bankruptcy discharge of that debt in 2011. Lovegrove filed this action alleging that Ocwen Home Loans Servicing, L.L.C. ("Ocwen") violated both the Fair Debt Collection Practices Act (FDCPA) and the Fair Credit Reporting Act (FCRA) by attempting to collect his mortgage debt after it had been discharged in bankruptcy and by falsely reporting to consumer reporting agencies ("CRAs") that the debt was still owed. Ocwen moved for summary judgment, and the district court granted the motion. The district court held that the FDCPA claims fail because there was no attempt by Ocwen to collect a debt, that the FDCPA claims were otherwise precluded by the Bankruptcy Code, and that Ocwen had no duty under the FCRA until Lovegrove properly notified a CRA of a dispute with Ocwen's reporting. For the reasons stated below, we affirm.

I.

The following material facts are not in dispute. In 2006, Lovegrove signed a promissory note in the amount of $1,239,000.00 in favor of Bank of America and secured by a deed of trust on a home at Smith Mountain Lake in Moneta, Virginia. Lovegrove defaulted on the loan in April 2009 but continues to live at the property. Lovegrove filed for Chapter 7 bankruptcy

2

relief, and in March 2011, he obtained a discharge of his obligation to Bank of America under the promissory note.

On October 1, 2012, Ocwen became the servicer of Lovegrove's mortgage.[1] On October 5, 2012, Ocwen sent a letter to Lovegrove with an accounting of the debt, which had been discharged but not paid. The letter provides for a procedure to dispute the validity of the debt and contains the following disclaimer, in bold italicized font:

> ***This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.***

J.A. 45. On the same day, Ocwen sent another letter detailing "Alternatives to Foreclosure" which contains an identical disclaimer but without the emboldened typeface. J.A. 151-52. Ocwen then began sending monthly account statements. See J.A. 48-49. Among other things, the monthly statements list the principal balance, the next payment due date, a payment coupon, and the total amount due. Under a section entitled "Important Messages," the account statements provide the following:

> If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please

---

[1] There is an ongoing dispute as to who actually owns the note. However, that dispute does not affect our analysis.

3

> read the bankruptcy information provided on the back of this statement.
>
> Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only. . . .

J.A. 48. The "Important Bankruptcy Information" section on the back of the statements reads:

> If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have any questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us . . .

J.A. 49. The only other communication Ocwen sent to Lovegrove was an escrow account disclosure statement mailed in July 2014. This communication contains the same disclaimer as the two October 5, 2012 letters. See J.A. 158-63.

Additionally, from October 2012 through May 31, 2013, Ocwen improperly reported to CRAs that Lovegrove still owed on the discharged debt. J.A. 257. From November 2012 to April 2014, Lovegrove wrote multiple letters to Ocwen requesting that Ocwen "stop collection [and] reporting debt to the credit bureau's [sic]." See J.A. 166. In June 2014, Lovegrove wrote to the three major CRAs[2] that Ocwen was misreporting a discharged debt.

---

[2] The three major CRAs are Equifax, Experian, and TransUnion.

4

J.A. 105. On July 21, 2014, Ocwen received a dispute notification from Experian, and on that same day, Ocwen sent a notice to "all consumer reporting agencies to which it reports removing any reporting as to [] Lovegrove's discharged mortgage debt." J.A. 41-43.

## II.

In June 2014, Lovegrove filed this action in the Western District of Virginia alleging that Ocwen violated the FDCPA by attempting to collect a debt that was discharged in bankruptcy by misrepresenting the consequences of non-payment and that Ocwen violated the FCRA by misreporting the status of the debt. Following discovery, the district court granted Ocwen's motion for summary judgment as to both claims. J.A. 262-91. The court held that Ocwen was not attempting to collect a debt within the meaning of the FDCPA and that the FDCPA claims were also precluded by the Bankruptcy Code. The court also determined that Lovegrove could not maintain a cause of action under the FCRA or the FDCPA related to Ocwen's misreporting of the debt. Lovegrove timely appealed.

## III.

Lovegrove appeals the district court's grant of summary judgment to Ocwen. We review de novo. Lee Graham Shopping Ctr., LLC v. Estate of Kirsch, 777 F.3d 678, 681 (4th Cir. 2015). Summary judgment is appropriate if "the movant shows that there

5

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Lovegrove argues that the district court erred in dismissing his FDCPA and FCRA claims. We address each in turn.

A.

The FDCPA was enacted to curb "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Importantly, it only applies to communications sent in connection with the collection of a debt.[3] See id. § 1692e (prohibiting false, deceptive, or misleading representations "in connection with the collection of any debt"); id. § 1692f (prohibiting unfair or unconscionable means "to collect or attempt to collect any debt").

Although there is no bright-line rule, "[d]etermining whether a communication constitutes an attempt to collect a debt is a 'commonsense inquiry' that evaluates the 'nature of the parties' relationship,' the '[objective] purpose and context of the communication [ ],' and whether the communication includes a demand for payment." In re Dubois, 834 F.3d 522, 527 (4th Cir. 2016) (citing Gburek v. Litton Loan Servicing LP, 614 F.3d 380,

---

[3] The parties do not dispute that Ocwen is a debt collector and that Lovegrove is a consumer as defined by the FDCPA.

385 (7th Cir. 2010)).[4]  Applying this commonsense inquiry, we hold that Ocwen's communications do not constitute an attempt to collect a debt.

Here, the communications were for informational purposes only, were non-threatening in nature, and contained clear and unequivocal disclaimers to establish that they were not in connection with the collection of a debt under Lovegrove's circumstances.  For instance, the two October 5, 2012 letters and the July 5, 2014 letter state: "... *[I]f the debt . . . has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.*"  J.A. 45-46, 151-52, 158-63 (emphasis in originals). Similarly, the monthly statements include the following disclaimer: "If . . . the obligation referenced in this statement has been discharged in bankruptcy, this statement is

---

[4] In granting summary judgment, the district court applied the least sophisticated consumer test in determining whether Ocwen's activities constituted an attempt to collect a debt. However, the district court did not have the benefit of this Court's In re Dubois opinion when it reached its decision.  We believe that the "commonsense inquiry" described in In re Dubois is the proper standard in this case.  Nevertheless, even under the least sophisticated consumer standard, Lovegrove's FDCPA claims would fail for the reasons stated by the district court. We note there is an argument that sophisticated and high-dollar loan arrangements should not be analyzed under the least sophisticated consumer standard.   Perhaps, sophisticated consumers should not get the benefit of the lenient standard when they are part of a complex relationship or situation that may be confusing to less sophisticated individuals.

7

for informational purposes only and is not an attempt to collect a debt." J.A. 49.

In a financial arrangement such as this, courts presume "a basic level of understanding and willingness to read with care." United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996). Thus, Lovegrove is deemed to have the knowledge of these straightforward disclaimers. Armed with that knowledge and the understanding that his debt had been discharged in bankruptcy, Lovegrove should have known that Ocwen was not attempting to collect a debt from him.[5]

As noted by the district court:

> This is not a case where a creditor harassed the debtor or tried to pressure the debtor into making payments through multiple phone calls or threats. Nor is this a case where the debtor signed a modification agreement or turned over the deed to the property and the creditor continued to demand payment.

---

[5] Additionally, as explained by the district court, the communications were not sent for the "animating purpose" of obtaining payment and most do not contain a demand for payment. J.A. 279-83; see In re Dubois, 834 F.3d at 527. The only communications that could possibly be viewed as a demand for payment are the monthly account statements. See J.A. 48-49. Even though the monthly statements generally request payments, we believe that the disclaimer is sufficient to provide notice that, for customers in bankruptcy, Ocwen was providing an updated account summary and not demanding payment. See Goodin v. Bank of Am., N.A., 114 F.Supp.3d 1197, 1206 (M.D. Fla. 2015) ("A regular bank statement sent only for informational purposes is . . . not an action in connection with the collection of a debt."). Again, Lovegrove is presumed to have read the statements with care. See Nat'l Fin. Servs., Inc., 98 F.3d at 136.

J.A. 282-83. Rather, this is a case where a debtor, who has been discharged in bankruptcy but continues to live in a million-dollar home, received documents that contain clear disclaimers indicating that they are not an attempt to collect a debt.[6]

Accordingly, under a "commonsense inquiry," Lovegrove has failed to adduce sufficient evidence that the communications were sent in connection with the collection of a debt. For this reason, we affirm the grant of summary judgment on the FDCPA claim.[7] Because we find that Ocwen's communications are not an attempt to collect a debt and the FDCPA is not implicated, it is not necessary to determine whether the Bankruptcy Code precludes the FDCPA under these facts.

---

[6] Foreclosure proceedings against Lovegrove are still possible because foreclosure is an in rem action that survives a bankruptcy discharge. Johnson v. Home State Bank, 501 U.S. 78, 83 (1991). The FDCPA does not completely prohibit debt collectors from communicating with or seeking payment from a debtor who has been discharged in bankruptcy. Such communications, if they are in connection with the collection of a debt, must simply comply with the FDCPA, for example, they must not be false, deceptive, or misleading.

[7] Ocwen's actions could be described as a sharp business practice. Oral Argument at 26:35, Lovegrove v. Ocwen Home Loans Servicing, No. 15-2158 (4th Cir. Oct. 27, 2016), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Nevertheless, the specific facts and circumstances of this case simply remove Ocwen's communications from the realm of debt collection activity.

B.

We next address Lovegrove's claim that Ocwen violated the FCRA. The FCRA, in relevant part, prohibits a person from providing inaccurate information "relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). The Act also requires those who "regularly and in the ordinary course of business furnish[] information to one or more consumer reporting agencies" to correct and update information provided to CRAs so that the information is "complete and accurate." Id. § 1681s-2(a)(2). There is no private right of action under § 1681s-2(a). Id. § 1681s-2(c), (d); Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 149 (4th Cir. 2008).

A private right of action does exist under 15 U.S.C. § 1681s-2(b), which requires a "creditor who has been notified by a [CRA] that a consumer has disputed information furnished by that creditor" to investigate the dispute, "'report the results of the investigation to the consumer reporting agency,'" and, if any information was inaccurate, report the results of the investigation to the other CRAs. Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 429-30 (4th Cir. 2004) (quoting 15 U.S.C. § 1681s-2(b)). The district court found that Ocwen complied with this requirement. J.A. 284-85. We agree. The undisputed facts

10

support the conclusion that Ocwen complied with § 1681s-2(b) when Ocwen immediately corrected the credit reporting error once notified by a CRA of the dispute. J.A. 41-43.

Lovegrove also attempts to repackage his FCRA claims as violations of the FDCPA. We have reviewed these claims and conclude that they fail for the reasons stated by the district court.

Accordingly, we conclude that Lovegrove has failed to present sufficient evidence to create a genuine issue of material fact to establish this cause of action, under either the FCRA or the FDCPA, arising out of Ocwen's incorrect reporting. For this reason, we affirm the grant of summary judgment on the FCRA claim and any related FDCPA claim.

## IV.

For the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>